**Ann CARON**

v.

**MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 27.**

Supreme Judicial Court of Maine.

Argued May 20, 1991.
Decided July 18, 1991.

William J. Smith (orally), Van Buren, for employee.

Jonathan W. Sprague (orally), Stevens, Engels, Bishop & Sprague, Presque Isle, for employer.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

CLIFFORD, Justice.

This appeal presents the question whether an employee seeking workers' compensation benefits for a mental injury arising out of work-related stress pursuant to 39 M.R.S.A. § 51(3)(A) (1989) must demonstrate that she experienced work stress that was extraordinary and unusual in comparison to pressures experienced by the average of all employees or in comparison to pressures experienced by the average

employee performing the same job with similar duties. Because we conclude that section 51(3)(A) requires a comparison of the employee's work stress with the pressures and tensions experienced by the average employee generally, the standard applied by the Workers' Compensation Commission in awarding Ann Caron benefits for her work-related mental injury, we affirm the decision of the Appellate Division upholding the Commission's award.

Maine School Administrative District No. 27 (the District) hired Ann Caron in 1985 to develop, direct and teach in the District's program for gifted and talented children. During the 1986–1987 school year, the District implemented changes in the program that altered Caron's job responsibilities. Whereas prior to 1987 students from outlying towns were bused to Fort Kent to participate in the program, in early 1987 the District began requiring Caron to travel to the elementary schools in Eagle Lake, St. Frances and Wallagrass, as well as Fort Kent, to implement the program. Fewer teaching resources were available to Caron in the outlying schools, and she was required to teach more classes with less preparation time. Caron had to coordinate the program with a much larger group of faculty and administrators in the various schools and explain the changes to all of the parties involved. The restructuring of the program caused controversy among parents and students, whose dissatisfaction often was directed at Caron.

Caron began to experience stress-related symptoms in the spring and summer of 1987. Her emotional health deteriorated and her work performance declined, and in the fall of 1987 she received a reprimand suggesting that she had excessive absences from school and that her job performance needed improvement. After visiting a psychologist in December 1987 for treatment of stress-related depression, Caron left her job at his instructions. Pursuant to 39 M.R.S.A. § 51(3),[1] Caron filed a petition for

---

1. 39 M.R.S.A. § 51(3) (1989) provides:
 **Mental injury caused by mental stress.** Mental injury resulting from work-related stress does not arise out of and in the course

 of employment unless it is demonstrated by clear and convincing evidence that:
 **A.** The work stress was extraordinary and unusual in comparison to pressures and ten-

award of compensation with the Workers' Compensation Commission alleging that her depression was caused by stress created by her employment.

After a hearing, the Commission awarded continuing compensation benefits to Caron for her mental injury. In applying the provisions of 39 M.R.S.A. § 51(3)(A) to determine that Caron's injury was compensable, the Commission compared Caron's work pressures with the work pressures experienced by the average employee generally, and found by clear and convincing evidence that Caron experienced work stress that was extraordinary and unusual in comparison to the pressures experienced by the average of all employees. After the Appellate Division affirmed the decision of the Commission on the District's appeal, we granted the District's petition for appellate review. *See* 39 M.R.S.A. § 103–C (1989).

■ The District asserts that the Commission[2] erred in comparing Caron's work stress to the pressures experienced by the average employee generally, arguing that section 51(3)(A) requires a comparison of the employee's work stress with the stress experienced by the average employee performing a similar job with the same duties.[3] We find nothing in either the statutory language or the legislative history of section 51(3) to support the District's contention. The plain, common and ordinary meaning of statutory language controls the interpretation of a statute, unless the statute itself reveals a contrary intent. *State v. Edward C.*, 531 A.2d 672, 673 (Me.1987).

Section 51(3)(A) provides that an employee seeking compensation for a mental injury arising out of her employment must demonstrate that her work stress "was extraordinary and unusual in comparison to pressures and tensions experienced by the average employee." The statute places no limitation or modification on the term "average employee." The plain meaning of the statute thus requires a comparison of the work pressures experienced by the injured employee with the work pressures experienced by the average of all employees, rather than the work pressures experienced by the average of a specific class of employees.

Prior to the enactment of section 51(3), an employee in Maine could obtain compensation for a work-related gradual mental injury if she could demonstrate that the injury was caused by "'a situation of greater dimensions than the day-to-day mental stresses and tensions which all employees must experience.'" *Townsend v. Maine Bureau of Pub. Safety*, 404 A.2d 1014, 1019 (Me.1979) (quoting *School Dist. No. 1 v. Department of Indus., Labor & Human Relations*, 62 Wis.2d 370, 377–78, 215 N.W.2d 373, 377 (1974)).[4] The District concedes that *Townsend* required a comparison of the pressures experienced by the injured employee to the pressures experienced by the average employee generally, but asserts that the legislature, in enacting section 51(3)(A), intended to change the standard to require a comparison of the employee's work pressures to the pres-

---

sions experienced by the average employee; and

**B.** The work stress, and not some other source of stress, was the predominant cause of the mental injury.

The amount of work stress shall be measured by objective standards and actual events rather than any misperceptions by the employee. A mental injury is not considered to arise out of and in the course of employment if it results from any disciplinary action, work evaluation, job transfer, layoff, demotion, termination or any similar action, taken in good faith by the employer.

**2.** Because the Appellate Division is an intermediate appellate body, we review directly the Commission decision. *Lagasse v. Hannaford Bros. Co.*, 497 A.2d 1112, 1119 (Me.1985).

**3.** The Commission found that Caron's work stress was unusual and extraordinary in comparison to the stress experienced by the average employee among all employees, and in comparison to the stress experienced by the average teacher. The Commission found, however, that her work stress was not unusual or extraordinary for a gifted and talented program teacher.

**4.** Alternatively, compensation for a work-related gradual mental injury was recoverable if the employee demonstrated by clear and convincing evidence that the ordinary stresses of her job were the predominant causes of her injury. *Townsend v. Maine Bureau of Pub. Safety*, 404 A.2d 1014, 1019–20 (Me.1979).

sures experienced by the average employee performing the same job.

■ In the absence of clear and explicit statutory language showing that the legislature intended a statute to modify case law, we will not interpret a statute to effect such a modification. *Rubin v. Josephson*, 478 A.2d 665, 671 (Me.1984). The language of section 51(3) manifests a clear and unambiguous intent to modify in several respects the requirements set forth in *Townsend* for obtaining compensation for a gradual mental injury.[5] There is no language in the statute, however, much less clear and unambiguous language, suggesting that the legislature intended to modify the *Townsend* requirement that an injured employee's job pressures be compared to the pressures experienced by the average employee generally. In the absence of any evidence that the legislature intended that an employee's work stress be compared to the work stress experienced by the average of only those employees performing the same job as the injured employee, we are not persuaded that the legislature intended to adopt such a standard.[6] *See Rubin*, 478 A.2d at 671.

■ The District also contends that the Commission erred in awarding compensation to Caron because her mental injury resulted from disciplinary action taken in good faith by the District rather than from pressures arising out of Caron's job itself. Section 51(3) provides that "[a] mental injury is not considered to arise out of and in the course of employment if it results from any disciplinary action, work evaluation, job transfer, layoff, demotion, termination or any similar action, taken in good faith by the employer." There was evidence before the Commission that Caron began to experience stress because of her employment as early as the spring of 1987, long before she received a written reprimand from the District in November 1987. There was ample evidence to support the Commission's finding that Caron's mental injury was caused by pressures associated with her employment as a teacher in the program for gifted and talented children rather than by disciplinary action taken by her employer.

The entry is:

Judgment affirmed.

All concurring.

---

5. Section 51(3) imposes a higher standard of proof on an employee seeking compensation for a work-related mental injury to demonstrate *by clear and convincing evidence* that she experienced greater pressures than those experienced by the average employee. *Compare Townsend*, 404 A.2d at 1019 *with* 39 M.R.S.A. § 51(3)(A). Section 51(3) also completely eliminates the second alternative set forth in *Townsend* by which an employee could demonstrate she was entitled to compensation for a gradual mental injury. *See supra* note 4. Instead, section 51(3) places a mandatory additional burden on an employee to demonstrate by clear and convincing evidence that work stress was the predominant cause of her mental injury. *Compare Townsend*, 404 A.2d at 1020 *with* 39 M.R.S.A. § 51(3)(B).

6. Where there is no ambiguity in the language of a statute, there is no reason to go beyond the face of the statute to consider the legislative history. *See Stone v. Board of Registration in Medicine*, 503 A.2d 222, 226 (Me.1986). The District nevertheless asserts that the Statement of Fact accompanying the bill that was enacted into law as section 51(3) expresses a legislative intent to require a comparison of the claimant's job stress to work stress experienced by the average of only those employees performing a similar job as the claimant. *See* L.D. 1668, Statement of Fact (113th Legis.1987).

Contrary to the District's assertion, the citation to *Sloss v. Industrial Comm'n*, 121 Ariz. 10, 588 P.2d 303 (1979), in the Statement of Fact is directed only to the requirement that an employee demonstrate that she experienced extraordinary and unusual work stress in order to obtain compensation for a work-related mental injury. There is no suggestion in the Statement of Fact that the legislature intended to adopt the Arizona court's approach of comparing the claimant's work stress to the stress experienced by the average employee performing the same job. *See* L.D. 1668, Statement of Fact (113th Legis.1987).