Henry ROSS

v.

OXFORD PAPER COMPANY and/or Travelers Insurance Company.

Supreme Judicial Court of Maine.

Sept. 16, 1976.

Beliveau & Beliveau, P. A., by Albert J. Beliveau, Jr., Rumford, for plaintiff.

Norman & Hanson, by Robert F. Hanson, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

Petitioner, Henry Ross, had worked for 25 years as a roll handler at the Oxford Paper Company mill. The job required the manual manipulation of rolls of paper weighing from 150 to 3500 pounds. For several years petitioner had been experiencing seizures of numbness in his hands, and he had received several traction treatments in the first aid department at the mill. Finally, on March 17, 1974 petitioner was compelled to cease work due to total numbness in his hands. On October 9,

1974, Henry Ross filed a petition for Award of Compensation with the Industrial Accident Commission. The physician's report which he introduced diagnosed his ailment as carpal tunnel syndrome, a "compression neuropathy that occurs with chronic, reoccurring trauma of specific type to the heel of the hand." On January 24, 1975 the Commissioner issued a decree awarding petitioner full compensation from March 17, 1974. Finding as a matter of law that the disability had arisen after October 3, 1973, the Commissioner applied the Workmen's Compensation Law in effect after that date in which only personal injury and not injury "by accident" was required. The employer appealed from a pro forma decree of the Superior Court for Oxford County sustaining the Commissioner's decision. We deny the appeal.

An important threshold question which must be considered by this Court is the correct statute to be applied in the present case. By the provisions of Chapter 389, Laws of Maine, 1973, the criterion for coverage of injuries under the Maine Workmen's Compensation Act was modified effective October 3, 1973. The new standard for entitlement to compensation under 39 M.R.S.A. § 51 was to be "personal injury" and not the previously prescribed "personal injury by accident."[1] In order to determine which criterion should be applied to this claimant, it is necessary that we fix the date of his disability. The Commissioner found that date to be March 17, 1974, noting that "[t]his is when the 'injury' became established as a matter of fact which is not denied by anyone."

---

* Mr. Justice Weatherbee sat at oral argument and participated in conference but died before this opinion was adopted.

1. We are aware that the words "by accident" were not actually deleted from 39 M.R.S.A. § 51, the section pertaining to eligibility for compensation, although the phrase was deleted by the 1973 Legislature from 39 M.R.S.A. § 52, the section which enables a claimant to receive certain medical services if he is otherwise qualified under the Act. In *Canning v. State Department of Transportation*, Me.,

347 A.2d 605 (1975) we held that the intent of the Legislature was to excise "by accident" from the entire Act, and we reviewed that appeal as if the phrase were deleted from section 51 effective October 1, 1973. We noted that although the intent of one legislature cannot be determined from the actions of a succeeding legislature, in fact the 107th Legislature in 1975 rectified this legislative oversight and eliminated all references to accident in section 51 and other sections of the Act. P.L.1975 ch. 480.

■ The disability claimed in the instant case would be classed as a gradual injury, cumulatively caused by repeated trauma to the hands. Professor Larson in his classic treatise on workmen's compensation points out that the practical problem of fixing a specific date for a gradual injury is generally handled by using the date on which the disability manifests itself.[2] Larson notes that in *Ptak v. General Electric Co.*, 13 N.J.Super. 294, 80 A.2d 337 (1951) the date of a gradually acquired sacroiliac strain was deemed to be "the first moment the pain made it impossible to continue work." In another New Jersey case, *DiMaria v. Curtiss Wright Corp.*, 23 N.J.Misc. 374, 44 A.2d 688 (1945), *rev'd on other grounds*, 134 N.J.L. 524, 49 A.2d 243 (1946), *aff'd* 135 N.J.L. 470, 52 A.2d 698 (1947), a case also involving gradual loss of use of the hands, the date of the injury was held to be the "date on which this development finally prevented claimant from performing his work." 1a A. Larson, Workmen's Compensation Law, § 39.50 (1976). In our case, it is undisputed that March 17, 1974 was the date on which the claimant was finally prevented from working inasmuch as the disability had fully manifested itself on that day. We therefore conclude that the Commissioner was correct in applying the Workmen's Compensation Act as amended.

Having determined the date of the disability, we must now decide the substantive issue of whether such disability is compensable under our Act, *i. e.*, did claimant suffer a "personal injury arising out of and in the course of his employment" thus entitling him to compensation under the amended 39 M.R.S.A. § 51? The Legisla-

ture did not define for us what it intended by the use of the words "personal injury" (as it had not defined "personal injury by accident" under the old section 51). In turning to case law for guidance, we find no Maine cases involving the compensability of gradual injuries under the new Workmen's Compensation Act. However, the case law of other jurisdictions with "injury" statutes, although such are indeed few in number,[3] offers some precedent.

■ Massachusetts has never required that an injury be accidental to be compensable. *See* Mass.Acts, c. 751 (1911), *as amended* Mass.Gen.Laws Ann. ch. 152, § 26 (Supp.1976). In discussing the difference between coverage under an "accident" as opposed to an "injury" statute, the Supreme Judicial Court of Massachusetts has offered the following illustration:

. . . if a workman became blind in consequence of an explosion at the factory, that would constitute an injury by accident; but if in consequence of the nature of his employment his sight was gradually impaired and eventually he became blind, that would be an injury, but not an injury by accident.

*In Re Madden*, 222 Mass. 487, 111 N.E. 379, 380 (1916) *quoting* the English case of *Trim Joint District School Board of Management v. Kelly*, (1914) A.C. 667, 679. The Court noted that Massachusetts would compensate for the latter gradual blindness, but England and most American jurisdictions would not find such injury compensable since no "accident" was involved as in the explosion situation. The use of loss of hands in our present case is analogous to the gradual loss of use of eyes in

2. On the other hand, Professor Larson also observes that for certain purposes the date of the injury may be identified with the onset of pain requiring medical attention, although such pain does not result in complete inability to work. However, the cases he cites for this proposition are inapposite to the facts of the case at bar since they all involve either occupational disease or a sudden and definite accident, as distinguished from the gradual injury suffered by Mr. Ross. 1a A. Larson,

Workmen's Compensation Law, § 39.50 (1976).

3. A survey of the present law in all American jurisdictions reveals that in only six states, (California, Iowa, Massachusetts, Minnesota, Rhode Island, and Texas) is an accident neither required anywhere in the language of the workmen's compensation act nor has it been read in judicially. *See* 1a Larson, *supra* at § 37.10.

the illustration *supra,* and we find such injury to be compensable under our Maine "injury" statute, as it would be under the similar statute in Massachusetts. Our opinion is strengthened and compelled by two recent cases of this Court which are important to examine at this point.

In *Towle v. Department of Transportation, State Highway,* Me., 318 A.2d 71 (1974), a back strain resulting gradually from the posture that claimant was required to assume in order to perform his work as a street sweeper operator was held not to satisfy the "by accident" requirement of the old statute. The majority of the Court was of the opinion that such a holding of noncompensability was clearly necessitated by Maine precedent. The gradual disability was the result of neither an accident as the word had been construed in various cases, nor was it one of the occupational diseases covered by 39 M. R.S.A. § 181 *et seq.,* the occupational disease law. We noted in *Towle* that we were aware that effective October 3, 1973 the words "by accident" were stricken from the statute. But we determined that "[w]e need not concern ourselves with the effect of this amendment to the statute since the events with which we are here concerned occurred long prior thereto." Although we intimated no opinion in *Towle* as to what the outcome of the case might have been, were the new statute applicable, the answer is readily ascertainable from a reading of our later decision in *Canning v. State Department of Transportation,* Me., 347 A.2d 605 (1975).

*Canning* involved a claimant with a pre-existing coronary insufficiency who, while shoveling dirt in his capacity as a highway maintenance man, experienced a sudden attack of angina. The Commissioner found the injury compensable during the period of hospitalization following the attack. The facts of our present case are slightly different from those in *Canning* in that Mr. Ross suffered a gradual injury and not aggravation of a pre-existing condition. Yet the case contains significant dicta concerning the purposes and philosophy behind the 1973 amendments, the crux of the case at bar.

We said in *Canning* that the amendments were intended to avoid results such as the one produced in *Towle* in which a gradual injury was not compensable because not caused by an "accident." We pointed out that the amendments were an attempt by the Legislature to sharpen or reemphasize the original purpose of the act, the compensation of employees for injuries suffered in the course of employment. Indeed, by excising the accident standard from the Act, the Legislature has greatly liberalized and materially broadened the criterion for coverage. The case at bar, involving a gradual injury formerly noncompensable, is clearly the type of situation the Legislature had in mind when it modified the statute and legislatively overruled *Towle.* We accordingly conclude that Mr. Ross has in fact suffered the "personal injury" required by 39 M.R.S.A. § 51.

Section 51 also requires that the injury have arisen "out of and in the course of his employment." This is a question of fact, and the Commissioner properly relied on Dr. Swengel's report as the basis of his decision. Our review of the physician's report contained in the record convinces us that the Commissioner was warranted in determining that there was a causal relationship between the employment and the injury. We conclude that claimant has satisfied all of the requirements for coverage contained in 39 M.R.S.A. § 51.

█ We now turn to appellants' argument that claimant is barred by the statute of limitations contained in the notice section of our Act. As we applied the coverage section in effect on March 17, 1974, so we apply the notice section in effect on that date. Under 39 M.R.S.A. § 63 (as amended 1973), notice must be given within 30 days after the date of injury. In discussing notice and claim periods, Professor Larson notes that "under the 'injury' type

of statute, there is now almost complete judicial agreement that the claim period runs from the time compensable injury becomes apparent." 2 Larson, *supra* at § 78.42(a). Compensable injury was not apparent in this case until March 17, 1974, when the disability manifested itself to such an extent that Mr. Ross was compelled to cease work. The thirty days is thus computed from March 17 and not from the first moment that he had experienced pain.

In awarding full compensation, the Commissioner impliedly found the evidence sufficient to support a finding that the requisite notice was given. The unrefuted testimony in the record indicates that following the onset of total disability, Dr. Royal, the company physician, had referred Mr. Ross to a neurosurgeon in Lewiston. The last day petitioner reported for work was March 17, 1974. Our statute, 39 M.R.S.A. § 63, prescribes that notice of injury be given to "an official" if the employer is a corporation. A company physician is clearly such an official; he acts in a representative capacity for the company and "[his] knowledge of injury to an employee would in the ordinary course of business conduct be communicated to the principal." *Sheehan's Case,* 128 Me. 177, 146 A. 258 (1929). We hold that Dr. Royal's knowledge of the injury is imputed to the employer since there was awareness not only of the nature of the injury but also of the accompanying facts connecting the injury with the employment. *See generally* 2 Larson, *supra* at § 78.31(a).

We recognize that the Commissioner's findings of fact are final if supported by competent evidence and reasonable inferences which may be drawn therefrom. 39 M.R.S.A. § 99; *Soucy v. Fraser Paper, Limited,* Me., 267 A.2d 919 (1970). Furthermore, we note that it is the appellants who carry the burden of proving that the Commission's decision was clearly erroneous as a matter of law. *Baker's Case,* 143 Me. 103, 55 A.2d 780 (1947). That the

appellants have failed to meet this burden is evident from the record.

The Commissioner noted in his ruling that he was liberally construing the Act in favor of the employee. This liberal construction mandate is in fact imposed upon him by the Legislature through the enactment of 39 M.R.S.A. § 92 as well as by the Law Court through past case law precedent. *See, e. g., Boyce's Case,* 146 Me. 335, 81 A.2d 670 (1951); *Estabrook v. Steward-Read Co.,* 129 Me. 178, 151 A. 141 (1931). We are satisfied that a correct result was reached by the Commissioner below.

The entry must be:

Appeal denied.

It is further ordered that the appellants pay to the appellee an allowance of $550.00 for his counsel fees, plus the actual reasonable out-of-pocket expenses for this appeal.

All Justices concurring.