James W. FARROW

v.

CARR BROTHERS CO., INC. and/or Northern Assurance Co.

Supreme Judicial Court of Maine.

Nov. 13, 1978.

Bornstein & Campbell by Joseph L. Bornstein (orally), Portland, for plaintiff.

Norman & Hanson by Robert F. Hanson (orally), Portland, for defendants.

**1342**

Before McKUSICK, C. J., and POMER-OY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

DELAHANTY, Justice.

James W. Farrow appeals from a pro forma decree entered by the Superior Court, Cumberland County, affirming a decision of the Industrial Accident Commission[1] which denied him workers' compensation benefits on the ground that he had failed to give notice to his employer of his work-related injury within the thirty-day period established by 39 M.R.S.A. § 63.[2]

█ We find sufficient legal and evidentiary support for the Commission's decision and accordingly deny the appeal.

During the latter part of 1976, appellant Farrow was employed by appellee Carr Brothers as a carpenter, a job requiring Farrow to work on his knees much of the time. Over the course of a three- to four-day period in early December, 1976, Farrow began to experience pain and swelling in his right knee. On December 6, 1976, Farrow approached his supervisor at Carr Brothers, Lincoln Gilman, and explained that he was having problems with his knee and that he would have to take the afternoon of the next day off in order to consult a doctor. He did not inform Gilman that he considered his injury to be work related although he had almost certainly reached that conclusion himself.[3]

On December 7, Farrow was examined by Dr. Michael Bedecs, an osteopath engaged in family practice. Farrow described his working conditions, and Dr. Bedecs confirmed Farrow's opinion that his knee injury was the result of his activities at Carr Brothers.[4] The inflammation and soreness were diagnosed as bursitis, and Dr. Bedecs prescribed a treatment of rest, heat, and bandages. He also advised Farrow to "avoid work if possible . . . ."

Despite Dr. Bedecs' advice, Farrow returned to work on December 9 after only one day's rest. At that time, he informed Gilman of the extent of his knee injury but again, as appellant concedes in his brief, he did not mention that he considered his condition to be work related. Farrow continued working at Carr Brothers despite increasing discomfort until December 23, 1976 when he voluntarily terminated his employ-

1. By virtue of 1978 Me. Acts ch. 612, the Commission's name has been changed to the "Workers' Compensation Commission."

2. Section 63 of 39 M.R.S.A. provides as follows:

No proceedings for compensation under this Act, except as provided, shall be maintained unless a notice of the injury shall have been given within 30 days after the date thereof. Such notice shall include the time, place and cause [of the injury], and the nature of the injury, together with the name and address of the person injured. It shall be given by the person injured or by a person in his behalf; or, in the event of his death, by his legal representatives, or by a dependent or by a person in behalf of either.

Such notice shall be given to the employer, or to one employer if there are more employers than one; or, if the employer is a corporation, to any official thereof; or to any employee designated by the employer as one to whom reports of injury to employees should be made. It may be given to the general superintendent or to the foreman in charge of the particular work being done by the employee at the time of the injury.

3. It is clear that by the next day, December 7, the appellant had concluded that his knee inju-

ry was work related. The hearing below produced the following colloquy:

Q. [by Mr. Hanson] When you went to Doctor Bedecs [on December 7], in your own mind, you felt it was your work activity that had caused your problem?
A. [by Mr. Farrow] Yes.
Q. There was no question in your mind whatsoever?
A. I had very few outside activities at that point, and there was nothing I could think of other than work.

4. The appellant was questioned about his December 7 consultation as follows:

Q. And, at that time [Dr. Bedecs] told you what your problem was?
A. That's right.
Q. And, he told you that based upon what you told him, that in fact your work activities probably caused your problem?
A. Yes.
Q. So on December 7 you not only knew yourself that in your own mind that this was an injury on the job, but this was confirmed to you by Dr. Bedecs' opinion after your discussion with him . . . ?
A. Yes.

ment. When asked at the hearing why he had decided to give up his job at Carr Brothers, he explained:

> Well, it was a combination of things. At that point I was trying to get a business together. I needed more time on my own to work on that. I was also suffering more and more pain from the knee, and it just wasn't expedient for me to keep working because I couldn't . . . keep up the pace of the work.

Farrow again consulted Dr. Bedecs on January 14, 1977. The swelling of the right knee had not subsided, and Dr. Bedecs decided to inject a needle and drain off the excess fluid. Farrow then realized that, in his words, "the condition had grown worse, and it was becoming obvious to me that it was going to lay me up for some time." Accordingly, soon after the January 14 treatment, Farrow visited Carr Brothers' office with the intention of filing a workers' compensation claim form. Although Farrow asserts that he filled out a form and discussed his situation with a Carr Brothers' secretary who accepted the form, neither the form nor the secretary were produced at the hearing.

Farrow next returned to the Carr Brothers' office some weeks later—probably in early February, 1977—to resolve his situation. At that time, a company official informed him that Carr Brothers had decided to reject his claim.

Farrow filed his petition for compensation on April 5, 1977, a hearing was held in June of that year, and the Commission issued its decree on January 9, 1978. After reviewing the testimony of Mr. Farrow and Dr. Bedecs and quoting the text of 39 M.R.S.A. § 63, the Commission found as follows:

> This employee testified under cross examination that he never told his foreman about a job injury and, as a matter of fact, never told anyone that he had sustained [a] work related injury. We feel that we are precluded from finding facts of causation based on medical evidence because of the failure to comply with the provisions of the aforesaid Section 63. The limitation is specific. A report must

be made or the employer must have knowledge of the work related injury within the thirty day period. This limitation is specific and the Commission, being a creature of statute, may not enlarge on statutory provisions.

In seeking a reversal of the Commission's decree, the appellant argues that he sustained a gradual work-related injury, that such injuries are compensable, and that our decision in *Ross v. Oxford Paper Co.*, Me., 363 A.2d 712 (1976), mandates a finding that the 30-day notice period commenced on December 23, 1976, the day when, according to appellant, his injury "manifested itself to such an extent that [he] was compelled to cease work." *Id.* at 716.

We disagree. In *Ross*, the petitioner had worked for 25 years in a paper mill handling large rolls of paper. He had been suffering from seizures of numbness in his hands for some time and was finally forced to stop working altogether due to that ailment. As in this case, the employer defended on the ground that the petitioner had failed to give notice of his claim within the thirty-day period specified in Section 63. In rejecting the employer's position, we held that "the claim period runs from the time compensable injury becomes *apparent.*" *Id.*, *quoting* 3 A. Larson, Workmen's Compensation Law § 78.42(a) (1976). (emphasis supplied). In *Ross*, it so happened that the disability did not become apparent until the day the petitioner was forced to cease work. Our finding that Ross had suffered a gradual injury did not serve to suspend commencement of the thirty-day claim period until his last day on the job. Indeed, had there been reliable evidence indicating that Ross' injury and its compensable nature were apparent to him prior to his final day of work, a far different case would have been presented.

In the case at bar, the testimony of both Farrow and his own physician demonstrates that at least by December 7, 1976, the injury had become apparent. The appellant was then aware 1) that he was injured and 2) that his disability was almost certainly of a compensable nature. On that day, his

own supposition that his injury was work related was confirmed by his physician after a thorough medical examination.[5] The degree of his awareness on December 7 was therefore more than sufficient to trigger Section 63's 30-day notice provision.

■ The question remains whether the appellee can be held to have received notice of Farrow's injury within the 30 days after December 7. The testimony indicates that Farrow discussed his swollen knee with his supervisor on December 6 and again on December 9 after he had spoken with his doctor. However, the testimony also demonstrates that, as the Commission stated, Farrow "never told his foreman about a *job* injury and, as a matter of fact, never told anyone that he had sustained [a] *work related* injury." (emphasis supplied). Section 63 expressly requires the injured employee to state the *cause* of his disability. This requirement is not met simply by informing the employer of the mere fact of an injury; the employer must also receive some indication that the injury might be *work related* and therefore compensable.[6] Similar notice-of-claim statutes in other jurisdictions have likewise been construed as requiring the employee to communicate the work relatedness of his injury to his employer. *Carey v. Travelers Insurance Co.*, 133 Ga. App. 657, 212 S.E.2d 13 (1975) (employee told supervisor of back pain without mentioning work relation of injury); *Complete Auto Transit, Inc. v. Reavis*, 105 Ga.App. 364, 124 S.E.2d 491 (1962) (employee told supervisor only that he was consulting a physician regarding back pain); *Fenix & Scisson Construction Co. v. Industrial Commission*, 27 Ill.2d 354, 189 N.E.2d 268 (1963) (foreman knew only that employee was in

the hospital); *Sanders v. Richardson*, 251 S.C. 325, 162 S.E.2d 257 (1968) (employer knew only that employee was hospitalized); *McKinney v. Berkline Corp.*, 503 S.W.2d 912 (Tenn.1974) (employee told company nurse only that she had a hip ailment). The Commission's finding that the appellant failed to meet this requirement rests on firm evidentiary support.

We do not find persuasive the appellant's argument that under 39 M.R.S.A. § 64 the employer, through Gilman the supervisor, had actual knowledge of the work relatedness of the injury so as to excuse the Section 63 notice requirement.[7] This is not a case where the foreman observes an employee suffer an obviously compensable injury, *Blue Bird Mining Co. v. Litteral*, 314 Ky. 709, 236 S.W.2d 936 (1951), nor is this a case where the employee relates the circumstances surrounding his disability to the foreman or company doctor. *See Ross, supra; Simmons' Case*, 117 Me. 175, 103 A. 68 (1918). Here, the appellant simply told Gilman that his knee was afflicted with bursitis. From the testimony introduced at the hearing, there is no reason to believe that Gilman understood, or ought to have understood, that the injury was work related. As Professor Larson has perceptively noted:

> In any sizeable industrial operation, there are many workers suffering from a variety of pains, infirmities and weaknesses that have nothing to do with industrial causes, and there are also many mishaps, falls and minor accidents that result in no personal injuries at all; it is not reasonable to expect an employer to launch an investigation every time a foreman hears someone complain of a pain or sees some-

---

5. See notes 3 and 4 and accompanying text *supra*.

6. Professor Larson takes the position that the employer must be made aware of the work relatedness of the injury.

   It is not enough . . . that the employer, through his representatives, be aware that claimant "feels sick," or has a headache, or fell down, or walks with a limp, or has a pain in his back, or shoulder, or is in the hospital, or has a blister, or swollen thumb, or has suffered a heart attack. There must in addi-

tion be some knowledge of accompanying facts connecting the injury or illness with the employment, and indicating to a reasonably conscientious manager that the case might involve a potential compensation claim. 3 A. Larson, *supra*, § 78.31(a) (footnotes omitted).

7. Section 64 provides in pertinent part:

   Want of [proper notice under Section 63] shall not be a bar to proceedings under this act if it be shown that the employer or his agent had knowledge of the injury.

one get a bump, and such knowledge does not therefore satisfy the objectives of the notice statute. 3 A. Larson, *supra*, § 78.31(a).[8]

The appellant's final argument is that in the case at bar, the absence of timely notice did not prejudice the employer. The exceptions to Section 63's notice requirement are enumerated in Section 64. Want of prejudice to the employer is not mentioned and therefore will not excuse a violation of Section 63. We have long held that the Commission is a creature of statute and that its decrees must derive their validity, if any, from the specific provisions of the Act. *Levesque v. Levesque*, Me., 363 A.2d 951 (1976); *Joyce v. Conary*, Me., 317 A.2d 794 (1974). Although compelled both by statute, 39 M.R.S.A. § 92, and case law, *Ross, supra* at 716, to construe the Act liberally in favor of the employee, the Commission has no authority to create its own exceptions. The appellant's argument must accordingly be rejected.

The entry is:

Appeal denied.

Judgment affirmed.

It is further ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees plus his reasonable out-of-pocket expenses for this appeal.

ARCHIBALD, J., did not sit.

---

8. Our finding that the 30-day claim period began on December 7 obviates the appellant's argument that the Carr Brothers' secretary who allegedly supplied the appellant with information and a claim form in mid-January had knowledge of the injury and that her knowledge ought be imputed to her employer. The 30-day period had certainly expired at least one week before the encounter is said to have taken place.

The appellant's related argument, based on *Pino v. Maplewood Packing Co.*, Me., 375 A.2d 534 (1977), that the secretary gave him misleading information upon which he relied to his detriment must also be rejected on the same grounds.