Raymond F. UPHAM

v.

VAN BAALEN PACIFIC CORP. and
Lumbermens Mutual
Casualty Company.

Supreme Judicial Court of Maine.

Argued Sept. 3, 1980.

Decided Oct. 14, 1980.

---

Sulides & Fletcher, Steven C. Fletcher (orally), Rockland, for plaintiff.

Richardson, Tyler & Troubh, Robert L. Hazard (orally), Ronald D. Russell, Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

GODFREY, Justice.

Employee Raymond F. Upham appeals from a pro forma judgment affirming a Workers' Compensation Commission decree which dismissed both his petition for award of compensation and his petition for determination of extent of permanent impairment. The Commission dismissed the petitions on the grounds that they were not timely filed. We affirm the pro forma judgment.

On June 7, 1972, Upham suffered a work-related injury to his right knee and lower back during a fall at his place of employment, Van Baalen Pacific Corporation. Mr. Upham's job consisted of cutting large bolts of cloth on a cutting table. He fell when his right foot suddenly became wedged behind one of the cutting table legs while he was transporting a cutting machine. Because of pain in his back and knee resulting from the fall, Mr. Upham ceased working at Van Baalen for one month immediately following the accident. He returned to work at Van Baalen in July of 1972.

Soon thereafter the employer's insurance carrier submitted to Mr. Upham a proposed agreement concerning payment of his medical bills. Mr. Upham refused to sign that agreement, fearing that by so doing he would appear to admit that he was cured and thereby release any rights he might have. By a letter dated January 15, 1973, the Industrial Accident Commission sent notice to Mr. Upham that the insurer's agreement papers were intended to protect his rights to compensation and that he should sign the papers immediately. Mr. Upham denied having received this letter, although it was correctly addressed to him.

Upon returning to work at Van Baalen in July of 1972, Mr. Upham experienced continued pain in his back and knee. He continued working, but regularly sought treatment from his family physician, Dr. Ivan R. Moss. Dr. Moss, an osteopathic practitioner, first diagnosed Mr. Upham as having suffered a traumatic bruising of the right knee and an overextension of the sacroiliac. By 1974, however, Dr. Moss had concluded that Mr. Upham's chronic pain stemming from the 1972 fall was caused by arthritic infiltration into the traumatized areas of the body. For this reason Dr. Moss referred Mr. Upham to Dr. John Wickenden, an orthopedic surgeon, for x-rays, further diagnosis, and treatment.

Dr. Wickenden first examined Mr. Upham on June 24, 1974, and during that visit began treating him for degenerative arthritis of the right knee. On July 9, 1974, Dr. Wickenden had an extensive discussion with Mr. Upham about Mr. Upham's arthritis and a regimen for treating it. Mr. Upham testified that during one of the 1974 visits he asked Dr. Wickenden whether the arthritic condition in his knee could have been

caused by the 1972 fall and the doctor replied that "it was possible."

On January 4, 1978, Mr. Upham permanently ceased his employment with Van Baalen because he could no longer tolerate his painful symptoms. At that time he was suffering pain in his right hip that was more troublesome than the pain in his right knee. Dr. Wickenden diagnosed this complaint as being caused by degenerative arthritis in the right hip. On the basis of his examinations and the history available to him, Dr. Wickenden gave it as his opinion that the 1972 fall "more likely than not" had a causal effect upon the development of arthritis in Mr. Upham's right hip.

On May 5, 1978, Mr. Upham filed with the Industrial Accident Commission a petition for award of compensation and a petition to determine extent of impairment. In both petitions Mr. Upham stated that although the cause of his injury was the falling episode in 1972, the date of the "injury" for which he sought compensation was January 4, 1978–the date on which his arthritic pain rendered him unable further to perform. In its answer to each petition the employer denied all Mr. Upham's allegations and raised the affirmative defense that the claim was barred by the statute of limitations provided in 39 M.R.S.A. § 95.

In September of 1978, the Workers' Compensation Commission rendered findings of fact and conclusions of law regarding Mr. Upham's petitions. The Commissioner found that although Mr. Upham had sustained "a real and traumatic incident" while at work on June 7, 1972, he had taken no steps to file a petition for award or otherwise protect his rights under the Workers' Compensation Act until May of 1978. In the Commissioner's view, Mr. Upham had not suffered a "gradual type injury" of the sort described in *Ross v. Oxford Paper Co.*, Me., 363 A.2d 712 (1976); rather, the injury was immediate on June 7, 1972. Mr. Upham had failed to respond to the Industrial Accident Commission's letter of January 15, 1973, encouraging him to protect his rights. Furthermore, the Commissioner found that Mr. Upham was aware of his painful symptoms, their arthritic origin, and their connection with the original injury at least as early as his consultations with Dr. Wickenden in July of 1974. Therefore, Mr. Upham had not filed his petitions within the two–year limitation period provided in 39 M.R.S.A. § 95. The Commissioner accordingly dismissed both of Mr. Upham's petitions.

■ The Commissioner's findings of fact are final if supported by competent evidence even if other evidence in the record might have supported a contrary conclusion. *McKenzie v. C. F. Hathaway Co.*, Me., 415 A.2d 252, 253 (1980). The date on which incapacity begins is normally a fact to be found by the Commissioner. *Theriault v. Walsh Construction Co.*, Me., 389 A.2d 317, 321–22 (1978). Mr. Upham contends that the Commissioner's failure to view his arthritic complications as a separate compensable injury was erroneous as a matter of law.

Mr. Upham would have us apply to this case certain principles derived from successive–injury cases such as *Robbins v. Bates Fabrics*, Me., 412 A.2d 374 (1980). According to Mr. Upham, the degenerative arthritis which caused him finally to cease his work at Van Baalen was a second "injury" distinct from the traumatic episode of June 7, 1972. Thus, he argues, the statute of limitations provided in 39 M.R.S.A. § 95 should run from the date Mr. Upham was forced to retire–January 4, 1978–rather than from the falling incident in 1972.

This Court has recognized that arthritic symptoms may be so related to an identifiable work–related trauma that the ensuing incapacity is compensable as causally linked to the original trauma. *E.g., Wadleigh v. Higgins*, Me., 358 A.2d 531 (1976); *Soucy v. Fraser Paper, Ltd.*, Me., 267 A.2d 919 (1970); *Bradbury v. General Foods Corp.*, Me., 218 A.2d 673 (1966). We have not heretofore had occasion to decide whether traumatic arthritis may be regarded as an injury distinct from the original work–related trauma for the purposes of applying the statute of limitations. Nor need we address that issue in this case: Mr. Upham

did not file his petition within the statutory period after his arthritic condition and its possible connection with the 1972 incident became manifest to him.

■ Mr. Upham relies on language in *Ross v. Oxford Paper Co.*, Me., 363 A.2d 712 (1976), suggesting that the date of a gradually acquired injury may be the date when disability manifests itself; " 'for example, the first moment the pain made it impossible to continue work.' " 363 A.2d at 714. However, in *Farrow v. Carr Bros. Co., Inc.*, Me., 393 A.2d 1341 (1978), we held that the date employment ends does not necessarily control; rather, the critical time is when the employee becomes generally aware of his injury and of its compensable nature. 393 A.2d at 1343–44. "[I]t is not necessary for the claimant to know the exact diagnosis or medical name for his condition if he knows enough about its nature to realize that it is both serious and work–connected." 3 A. Larson, *Workmen's Compensation*, § 78.41 at 15–92 (1976 & 1980 Cum.Supp.).

■ There was competent evidence in the record to support the Commissioner's findings of fact. Applying the principles of *Farrow* to those facts, the Commissioner correctly dismissed Mr. Upham's petitions on the ground that they were not filed within the two years prescribed by the statute of limitations. There was sufficient evidence to support a finding by the Commission that by July of 1974 Mr. Upham was aware that he was afflicted with arthritis and that the arthritis was possibly connected with his work–related fall. Therefore, at the latest, the two–year statute of limitations for filing claims provided in 39 M.R.S.A. § 95 began to run in July of 1974. Mr. Upham's petitions, filed on May 5, 1978, were not timely.

Mr. Upham further contends that even if the statute of limitations normally would have begun to run earlier than the date on which he ceased employment, in this case the statute of limitations does not control because of the "mistake of fact" exception in 39 M.R.S.A. § 95. The third sentence of that section provides that if the employee fails to file his petition within the prescribed two–year period because of mistake of fact about the cause or nature of his injury, he may file his petition within a reasonable time after he learns of his mistake. Mr. Upham contends that he was mistaken as to the nature of his injury for an indefinite period following the falling incident in 1972, presumably until he was forced to cease work on January 4, 1978. Therefore, he asserts, his petitions, filed on May 5, 1978, were timely.

In order to prevail, Mr. Upham must overcome the obstacle of *Pino v. Maplewood Packing Co.*, Me., 375 A.2d 534 (1977). This Court in *Pino* construed the "mistake of fact" exception to apply only to injuries of which the employee is unaware:

> Thus, the circumstances contemplated include those situations where the injury is latent or its relation to the accident unperceived. They do not include instances where, as here, the employee knows of the injury and its cause. In such a case the employee has notice of his claim and can proceed accordingly regardless of the ultimate diagnosis; the diagnosis only determines the extent of the injury, not its existence. 375 A.2d at 537–38.

We interpreted "nature of the injury" to mean a general description of the injury, such as damage to a part of the body, rather than a specific diagnosis. *Id.* at 537.

Mr. Upham seeks to distinguish *Pino* on the grounds that in that case the employee was claiming compensation for a single injury and was mistaken only as to the diagnosis. In this case, Mr. Upham asserts he has suffered a traumatic episode plus a separate, latent injury consisting of arthritic infiltration into the traumatized areas of the body. However, *Pino* requires only that the employee have a general conception of his injury. In the present case, the generalized injury was painful damage to the right knee and sacroiliac. Mr. Upham acquired knowledge of such an injury immediately upon his fall on June 7, 1972, at which time he was certainly aware that his pain was work–related. By July of 1974 Mr. Upham clearly understood that he had been diagnosed as having degenerative arthritis and

was aware that this condition was connected with his work–related fall in 1972. Whether he knew that this condition might ultimately incapacitate him is immaterial: the actual diagnosis "only determines the extent of the injury, not its existence." *Pino v. Maplewood Packing Co.*, Me., 375 A.2d 534, 538 (1977). *See also Malcolm v. Bath Iron Works Corp.*, Me., 413 A.2d 1314, 1317 (1980). In the circumstances, Mr. Upham's filing of his petitions on May 5, 1978, almost four years after his revealing consultations with Dr. Wickenden, cannot be viewed as occurring within a "reasonable time." The Commissioner did not err in dismissing the petitions, for they were not timely filed.

The entry is:

Appeal denied.

Pro forma judgment affirmed.

It is ordered that the employer pay to the employee an allowance of $550 for his counsel fees plus his reasonable out–of–pocket expenses for this appeal.

All concurring.