2009 ME 35

## Larry JENSEN

v.

## S.D. WARREN CO. et al.

Supreme Judicial Court of Maine.

Argued: Oct. 22, 2008.
Decided: April 7, 2009.

---

Thomas E. Getchell, Esq. (orally), Troubh Heisler, Portland, ME, for S.D. Warren Company and ESIS.

James J. MacAdam, Esq. (orally), Nathan A. Jury, Esq., David E. Hirtle, Esq., MacAdam Law Offices, P.A., Portland, ME, for Larry Jensen.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

GORMAN, J.

[¶ 1]   S.D. Warren Co. appeals from a decision of a Workers' Compensation Board hearing officer (*Stovall, HO* ), awarding Larry Jensen a closed-end period of partial incapacity benefits and ongoing total incapacity benefits for a 2004 gradual injury.   S.D. Warren contends the hearing officer erred in (1) determining that Jensen gave adequate notice of the gradual injury pursuant to 39–A M.R.S. § 301 (2008) and timely filed his petition pursuant to 39–A M.R.S. § 306 (2008); (2) foreclosing inquiry into attorney-client communications disclosed by Jensen regarding his recognition that he suffered a work-related gradual injury; (3) awarding ongoing "total" incapacity benefits pursuant to 39–A M.R.S. § 213 (2008), which provides for partial incapacity benefits; and (4) not treating the 2004 gradual injury as an aggravation of a pre-existing condition pursuant to 39–A M.R.S. § 201(4) (2008).   Because the hearing officer's order needs clarification regarding the date when the gradual injury manifested itself, and because the hearing officer erred in (1) ruling that an attorney-client communication, although disclosed by Jensen, remained privileged and not subject to inquiry by S.D. Warren, and (2) making insufficient findings in addressing the total incapacity issue, we vacate the hearing officer's decision and remand for further proceedings.

## I.  CASE HISTORY

[¶ 2]   Larry Jensen worked at S.D. Warren's paper mill from 1986 until 2004. He worked long hours, performing heavy work including lifting and rolling large rolls of paper, and driving a loaded clamp truck on rough, uneven cement.   He injured his lower back in 1993 when he tripped over a dolly and fell backward.   In 1994, Jensen was seen by an orthopedist

who reported that Jensen's fall at work had caused a pre-existing arthritic condition to flare up, and that "[i]f low back pain persists more than an additional 3–6 months then I feel that there is no further contribution from his one-time injury and the low back pain would be on the basis of early degenerative disc disease with associated facette joint arthritis."

[¶ 3] Jensen continued to experience back discomfort throughout his employment. He testified that he thought his back problems were due to nonwork-related arthritis or the 1993 injury. On January 24, 2004, his condition flared up after he lifted his dog at home. The pain increased for one month before going back to baseline. His doctor recommended that he rest his back.

[¶ 4] Around that time Jensen faced a lay-off because S.D. Warren was downsizing. The company gave Jensen the option of keeping his recall rights based on seniority or giving up his seniority rights in exchange for a larger severance package. Jensen chose to give up his seniority rights for the larger severance package. He was scheduled to work until February 9, 2004, but because of the flare-up of his back pain, his last day of work was January 27, 2004.

[¶ 5] More than two years later, in June of 2006, Jensen visited his attorney's office for assistance in applying for Social Security Disability benefits. Jensen testified that at that meeting, based on a conversation with his attorney, he recognized for the first time that he had sustained a second work-related injury to his back, as a result of the years of repetitive bending, pushing, pulling, twisting, and lifting at S.D. Warren.

[¶ 6] On June 15, 2006, Jensen filed a petition for award alleging two work-related injuries, an acute injury on November 2, 1993, and a gradual injury occurring on January 27, 2004, his last day of work. S.D. Warren asserted the two-year statute of limitations, 39–A M.R.S. § 306, and the ninety-day notice requirement, 39–A M.R.S. § 301, as defenses to both claims. The hearing officer determined that the claim for the 1993 injury was barred by the statute of limitations. Jensen does not contest that ruling.

[¶ 7] The hearing officer also found that Jensen experienced a gradual injury to his back, and established the date of injury as January 27, 2004. Relying on 39–A M.R.S. § 302 (2008), he concluded that the gradual injury was not barred by the two-year statute of limitations or the ninety-day notice provision because Jensen was operating under a mistake of fact as to the cause and nature of the injury until June 2006, when Jensen spoke with his attorney.

[¶ 8] At the hearing, S.D. Warren sought to inquire about Jensen's conversations with his attorney at the June 2006 meeting. It argued that Jensen had waived the attorney-client privilege by disclosing the substance of those conversations in support of his mistake of fact and causation claims. The hearing officer sustained Jensen's attorney-client privilege objection.

[¶ 9] Jensen, although only partially incapacitated from work, attempted to prove entitlement to 100% partial benefits or total benefits with evidence of a work search. The hearing officer awarded partial incapacity benefits for the period from January 27, 2004, to September 28, 2006, because Jensen had not begun his work search until that date. The hearing officer also awarded "total incapacity benefits under § 213" from September 29, 2006, forward, citing *Adams v. Mt. Blue Health Center*, 1999 ME 105, 735 A.2d 478 (providing for an award of total benefits pursu-

ant to 39–A M.R.S. § 212 when the employee proves both (1) the unavailability of work within the employee's local community, and (2) the physical inability to perform full-time work in the statewide labor market, regardless of availability). Title 39–A M.R.S. § 213 is the partial incapacity statute.

[¶ 10] S.D. Warren filed a motion for additional findings of fact and conclusions of law, and both parties filed proposed findings and conclusions. The hearing officer issued additional findings, but did not alter the original decision. S.D. Warren filed a petition for appellate review, which we granted pursuant to 39–A M.R.S. § 322 (2008) and M.R.App. P. 23(c).

## II.  LEGAL ANALYSIS

[¶ 11] The hearing officer determined that the date of injury for Jensen's gradual injury was January 27, 2004, the last day that he worked for S.D. Warren, but also held that the notice and limitations periods did not begin to run until he learned the cause and nature of his gradual injury in conversation with his attorney in June 2006. We review S.D. Warren's claims that the hearing officer erred in (1) concluding that Jensen was under a mistake of fact sufficient to toll the statutory notice and limitations periods for the gradual injury; (2) barring S.D. Warren from inquiring into the facts that Jensen learned at the meeting with his attorney; and (3) determining that Jensen is entitled to total incapacity benefits or 100% partial benefits.

### A.  Gradual Injuries and Mistake of Fact

#### 1.  Date of a Gradual Injury

[¶ 12] We have defined a gradual injury as "a single injury caused by repeated, cumulative trauma without any sudden incapacitating event." *Derrig v.*

*Fels Co.,* 1999 ME 162, ¶ 7, 747 A.2d 580, 582. Gradual injuries have been covered under the Workers' Compensation Act since 1973, when the Act was amended to include "personal injury" arising out of or in the course of employment. P.L.1973, ch. 389, as amended by P.L.1975, ch. 480 (codified at 39 M.R.S.A. § 51 (Supp.1975)); *see also Ross v. Oxford Paper Co.,* 363 A.2d 712, 713–14 n. 1 (Me.1976). Before the amendment, coverage was limited to personal injuries incurred "by accident," which restricted compensation to those injuries caused by sudden, traumatic precipitating events. *Ross,* 363 A.2d at 713 n. 1.

[¶ 13] Although establishing a specific date of injury for a gradual injury may be a medical fiction, establishing a date is legally important because the date of injury triggers the running of the ninety-day notice period and the two-year statute of limitations. 39–A M.R.S. §§ 301, 306. The date of injury is also relevant when (1) determining whether a statutory amendment is applicable, *see Ross,* 363 A.2d at 713 n. 1; (2) deciding which employer or insurer is responsible for the injury, *see Derrig,* 1999 ME 162, 747 A.2d 580; and (3) establishing the applicable average weekly wage, 39–A M.R.S. § 102(4) (2008).

[¶ 14] Because of the indefinite nature of their starting points, gradual injuries present special problems for deciding when the limitations and notice periods begin to run. We have defined the date a gradual injury "occurs" for all purposes as "the date the employee is aware of the injury and aware of its compensable nature." *Wilson v. Bath Iron Works,* 2008 ME 47, ¶ 4 n. 2, 942 A.2d 1237, 1238 (quoting *Derrig,* 1999 ME 162, ¶ 7, 747 A.2d at 582).

#### 2.  Mistake of Fact

[¶ 15] Title 39–A M.R.S. § 301 provides that "[p]roceedings for compensation

under this Act, except as provided, may not be maintained unless a notice of the injury is given *within 90 days after the date of injury.*" (Emphasis added.) "[T]he purpose of the [90–day] notice requirement is to permit a prompt investigation of the circumstances and to assure prompt and adequate medical attention." *Dunton v. E. Fine Paper, Co.,* 423 A.2d 512, 518 (Me.1980). The time during which the employee's knowledge of the existence of an injury, or its cause, is affected by a "mistake of fact" is not included in the ninety days. 39–A M.R.S. § 302.[1]

[¶ 16] The applicable statute of limitations, 39–A M.R.S. § 306, requires that a petition be "filed within 2 years after the date of injury."[2] The period may be tolled if the employee is mistaken concerning facts related to "the cause or nature" of the injury, in which case the employee must file the petition "within a reasonable time." *Id.* § 306(5).

■■■ [¶ 17] The "mistake of fact" provision in the statute of limitations establishes an exception to the two-year limit when an injury, or its cause, is not recognized due to a mistake of fact. *Pino v. Maplewood Packing Co.,* 375 A.2d 534, 537 (Me.1977). The exception applies in "those situations where the injury is latent or its relation to the accident unperceived[,

and does] not include instances where … the employee knows of the injury and its cause." *Id.* "A mistake of fact takes place either when some fact which really exists is unknown or some fact is supposed to exist which really does not exist." *Brackett's Case,* 126 Me. 365, 368, 138 A. 557, 558 (1927) (quotation marks omitted). The filing and notice periods are tolled because "when there is [a] 'mistake of fact as to the cause and nature of the injury,' it would be unfair to bar the claim *because the employee is unaware of it.*" *Pino,* 375 A.2d at 537.

■■■ [¶ 18] A failure to connect medical problems to a work-related cause constitutes a mistake of fact sufficient to extend the notice and limitations periods. *Dunton,* 423 A.2d at 517–18; *see also Francis v. H. Sacks & Sons,* 160 Me. 255, 203 A.2d 42 (1964) (finding injured worker operated under mistake of fact when relying on erroneous medical opinion). However, a mistake of fact as to the specific diagnosis of an injury is not the type of mistake of fact that would excuse compliance with the notice and limitations periods. *Pino,* 375 A.2d at 537 (stating that a mistake as to the nature of the injury "more readily fits a general description of the injury, i.e., damaged shoulder, than a specific diagnosis in connection therewith—tear of the rotator cuff"); *see also*

---

1.  Title 39–A M.R.S. § 302 (2008) provides:
    Want of notice is not a bar to proceedings under this Act if it is shown that the employer or the employer's agent had knowledge of the injury. Any time during which the employee is unable by reason of physical or mental incapacity to give the notice, or fails to do so on account of mistake of fact, may not be included in the 90–day period specified.

2.  Title 39–A M.R.S. § 306 (2008) provides, in relevant part:
    **1. Statute of Limitations.** Except as provided in this section, a petition brought

under this Act is barred unless filed within 2 years after the date of injury or the date the employee's employer files a first report of injury as required in section 303, whichever is later.

. . . .

**5. Mistake of Fact.** If an employee fails to file a petition within the limitation period provided in subsection 1 because of mistake of fact as to the cause or nature of the injury, the employee may file a petition within a reasonable time, subject to the 6–year limitation provided in subsection 2.

*Malcolm v. Bath Iron Works Corp.,* 413 A.2d 1314 (Me.1980) (finding petition barred despite mistake of fact that non-occupational insurance payments were workers' compensation benefits because petition was filed more than two years from last payment).

### 3. Date of Awareness of the Injury and its Compensable Nature

[¶ 19]  S.D. Warren contends that the concept of mistake of fact is incompatible with the concept of a gradual injury because the date of a gradual injury is defined as the date the employee becomes aware of the injury and its compensable nature.  It asserts that assigning a date of injury requires a determination that the employee is no longer mistaken as to the nature and cause of the injury as of that date.  Jensen's leaving work on January 27, 2004, establishes that he was aware he had an injury as of that date.  But his leaving work because of a perceived injury does not establish that Jensen was aware that the injury was work related and thus compensable.

[¶ 20]  *Ross* was the first case in which we addressed how the date of a gradual injury should be established.  At issue was whether the date of a gradual injury fell after the effective date of a statutory amendment and whether the employee gave timely notice. 363 A.2d at 714.  The employee in Ross worked for twenty-five years as a roll handler in a paper mill where he manually manipulated rolls of paper weighing from 150 to 3500 pounds. *Id.* at 713.  He experienced numbness in his hands for a number of years and received treatment for the condition in the mill's first aid department several times before he was compelled to cease work on March 17, 1974. *Id.* He was diagnosed with carpal tunnel syndrome, a "compression neuropathy that occurs with chronic, reoccurring trauma of specific type to the heel of the hand." *Id.*

[¶ 21]  We noted in *Ross* that the "practical problem of fixing a specific date for a gradual injury is generally handled by using the date on which the disability manifests itself." *Id.* at 714 (citing 1 a. Arthur Larson, *Workers' Compensation Law* § 39.50 (1976)).  We concluded that March 17, 1974, was the date of injury, as "it [was] undisputed that [on that date] the claimant was finally prevented from working inasmuch as the disability had fully manifested itself." *Id.* Thus, pursuant to *Ross,* the standard for determining the date of a gradual injury was the date on which the disability manifested itself, which in that case was the date the employee became disabled from work as a result of that injury.

[¶ 22]  Because March 17, 1974, was "the time [the] compensable injury [became] apparent," we determined that the period for giving notice of the injury began to run from that date, "and not from the first moment that he experienced pain." *Id.* at 716.

[¶ 23]  The date the disability manifested itself and the time the compensable injury became apparent coincided in *Ross.* That was not the case in *Farrow v. Carr Brothers Co.,* 393 A.2d 1341 (Me.1978).  In that case, the employee sought medical treatment on December 7, 1976, for what he had suspected was a work-related knee injury. *Id.* at 1342.  Although his doctor confirmed the suspicion, the employee did not tell the employer immediately that the knee injury was work-related. *Id.* He worked until December 23, 1976, when he could no longer continue, in part due to the injury. *Id.* At the earliest, he notified the employer that the knee injury was work-related on January 14, 1977. *Id.* at 1343.  The statute then in effect required employees to give notice of a work-related injury

within thirty days of the date of injury. *Id.;* 39 M.R.S.A. § 63 (Supp.1977). The Commissioner determined that Farrow had not given timely notice of the claim, and we affirmed. 393 A.2d at 1342.

[¶ 24] Farrow argued that he suffered a gradual injury and that pursuant to *Ross,* the thirty-day notice period commenced on his last day of work, which was the date his injury "manifested itself to such an extent that [he] was compelled to cease work." *Id.* at 1343 (quoting *Ross,* 363 A.2d at 716). *Ross* actually holds, however, that the notice period begins to run "from the time [the] compensable injury becomes apparent." 363 A.2d at 716. In distinguishing Farrow's circumstances from the facts presented in *Ross,* we stated:

> Our finding that Ross had suffered a gradual injury did not serve to suspend commencement of the thirty-day claim period until his last day on the job. Indeed, had there been reliable evidence indicating that Ross' injury *and its compensable nature* were apparent to him prior to his final day of work, a far different case would have been presented.

393 A.2d at 1343 (emphasis added).[3] Thus, in *Farrow* the thirty-day notice provision had been triggered on December 7, 1976, because on that date the employee was sufficiently aware (1) that he was injured, and (2) that his disability was of a compensable nature. *Id.* at 1343–44.

[¶ 25] In subsequent gradual injury cases, we reiterated that the controlling factors in determining the date of injury are awareness of (1) an injury, and (2) its compensable nature. *Upham v. Van*

*Baalen Pac. Corp.,* 420 A.2d 1229, 1232 (Me.1980) (noting that the date employment ends does not necessarily control); *Derrig,* 1999 ME 162, ¶ 7, 747 A.2d at 582. In those later cases, however, we did not distinguish establishing the date of injury for the purpose of triggering the notice and limitations periods from establishing the date of injury for other purposes.

■ [¶ 26] Reexamining our decisions, we conclude that *Ross* established the date of injury for the purpose of the application of the amendment allowing recovery for gradual injuries "by using the date on which the disability manifests itself." *Ross,* 363 A.2d at 714. *Ross* also established that the date an employee is required to give notice of the gradual injury is the date the "compensable injury becomes apparent." *Id.* at 716. Awareness of the compensable nature of the injury, therefore, was required only with respect to triggering the notice and limitations periods, and not to set a date of injury. It is in later cases that we merged the two concepts for the purpose of deciding the date of a gradual injury for all purposes. *Wilson,* 2008 ME 47, ¶ 4 n. 2, 942 A.2d at 1238; *Derrig,* 1999 ME 162, ¶ 6, 747 A.2d at 582; *Upham,* 420 A.2d at 1232. To avoid confusion of the two concepts, we return to our original holding, found in *Ross,* that the date of injury for a gradual injury is the date on which the injury manifests itself. The notice and limitations periods, however, may begin to run later, depending on the employee's awareness.

■ [¶ 27] The hearing officer's determination in this case that the date of the

---

3. This language only fits with our recitation of the facts in *Ross* if we focus on the inclusion of "and its compensable nature." "For several years [Ross] had been experiencing seizures of numbness in his hands, and he had

received several traction treatments in the first aid department at the mill." *Ross v. Oxford Paper Co.,* 363 A.2d 712, 713 (Me. 1976).

gradual injury was the last day that Jensen worked for S.D. Warren, January 27, 2004, may be supportable if it is the date on which the injury manifested itself. Based on the hearing officer's findings, however, it is unclear whether the date the injury manifested itself actually coincided with Jensen's last day of work. We therefore vacate the hearing officer's decision and remand for reconsideration of the date of injury in light of this opinion. The hearing officer should first determine the date of injury, i.e., the date on which the injury manifested itself, and then examine whether the statutory notice and limitations periods commenced on that date or whether they commenced at a later date based on a mistake of fact.

B. Proof of Mistake of Fact and the Attorney–Client Privilege

[¶ 28] Jensen asserts that his gradual injury is work-related and that he was justified in giving late notice of his claim and filing a late petition for award based on information communicated to him in a meeting with his attorney. The hearing officer found that Jensen was operating under a mistake of fact about the cause or nature of his 2004 gradual injury until he met with his attorney in June 2006. At the hearing, S.D. Warren attempted to elicit testimony about the conversations that took place at the June 2006 meeting that prompted Jensen to understand the cause or nature of his injury. The hearing officer sustained Jensen's objection on attorney-client privilege grounds.

[¶ 29] Barring this inquiry based on attorney-client privilege was error. Jensen disclosed the most significant part of the attorney-client communication as the basis for his claim. He asserted that the information indicating that the injury was causally related to his work came from his attorney. This factual information was essential to Jensen's claim for benefits, and it provided the basis for Jensen's "mistake of fact" contention to avoid the ninety-day notice requirement and the two-year statute of limitations. Jensen asserted the attorney-client privilege, not to keep the communication with his attorney confidential—he had already published the communication—but to prevent inquiry into the credibility of the "mistake of fact" claim that rested on his attorney-client communication.

[¶ 30] Pursuant to M.R. Evid. 502(b), the attorney-client privilege extends only to "confidential communications" between an attorney and client. An attorney-client communication that is disclosed to advance a claim for benefits is not a confidential communication. The attorney-client privilege of M.R. Evid. 502 does not protect such a published communication from discovery and inquiry when it relates to an essential fact in a proceeding.

[¶ 31] That this communication is not privileged is confirmed by M.R. Evid. 510, which specifies that any privilege is waived "if the person ... voluntarily discloses or consents to disclosure of any significant part of the privileged matter." Applying Rule 510, we have held that a privilege is waived when a "significant part" or "key element" of the privileged communication has been disclosed by the party claiming entitlement to the privilege. *State v. Lipham*, 2006 ME 137, ¶¶ 7–8, 910 A.2d 388, 391–92; *State v. Boucher*, 652 A.2d 76, 77–78 (Me.1994). The Advisers' Note accompanying the adoption of M.R. Evid. 510 states: "The proposition that a privilege is waived by voluntary disclosure is universally recognized."

[¶ 32] Commenting on the purpose of M.R. Evid. 510, Professors Field and Murray have observed:

A more difficult problem is when the holder's conduct should in fairness

amount to a waiver. A client, for instance, should not be allowed to state the client's reliance on his or her lawyer's advice and then assert the client's privilege not to let the lawyer testify about the advice actually given.

Richard H. Field & Peter R. Murray, *Maine Evidence* § 510.1, 253 (6th ed.2008). That comment informs the privilege claim before us today.

[¶ 33] Field and Murray's comment is consistent with the American Law Institute formulation of the rule regarding waiver of the attorney-client privilege.

> § 80 Putting Assistance or a Communication in Issue
>
> (1) The attorney-client privilege is waived for any relevant communication if the client asserts as to a material issue in a proceeding that:
>
> (a) the client acted upon the advice of a lawyer or that the advice was otherwise relevant to the legal significance of the client's conduct; or
>
> (b) a lawyer's assistance was ineffective, negligent, or otherwise wrongful.

Restatement (Third) of The Law Governing Lawyers § 80 (2000). The comment to section 80 provides:

> *Putting a privileged communication into issue.* The exceptions stated in Subsection (1) are based on considerations of forensic fairness.... If the communication could not be introduced, a client could present the justification of legal advice in an inaccurate, incomplete, and self-serving way.... Waiver extends to all communications relevant to the issue asserted by the client.

*Id.* cmt. b.

[¶ 34] Here, the privileged communication was published by Jensen to support his claim that he was not aware that his injury was work-related and that the later "discovery" of the cause of the injury was a "mistake of fact." When published by Jensen, his attorney-client communication was no longer confidential, and the attorney-client privilege was waived. The employer should have been permitted to ask Jensen what he learned during his conversation with his attorney that caused him to realize that he had sustained a new, work-related, gradual injury.

## C. Total or Partial Incapacity Benefits

[¶ 35] Because the matter must be remanded for further consideration, we address briefly the total or partial incapacity benefits issue that could arise, depending upon the resolution, on remand, of the date of injury and mistake of fact issues. The hearing officer found that Jensen had partial earning capacity. With evidence of a work search, Jensen attempted to prove entitlement to 100% partial benefits, or total benefits pursuant to *Adams v. Mt. Blue Health Center,* 1999 ME 105, 735 A.2d 478. Imputing a forty-hour light duty work capacity, the hearing officer awarded partial incapacity benefits for the period from January 27, 2004, to September 28, 2006, because Jensen had not begun his work search until that date. The hearing officer awarded "total incapacity benefits under § 213" from September 29, 2006,[4] reasoning as follows:

> As of September 29, 2006 the Employee began a work search. He provided evidence that he searched for work at over 300 potential employers. I am persuaded by the Employee's testimony and work search evidence that he made a

4. The total/partial distinction is important because an award of total benefits pursuant 39–A M.R.S. § 212 (2008) would be for the duration of the disability, while an award of 100% partial benefits would be subject to the durational cap set forth in 39–A M.R.S. § 213 (2008).

reasonable search for work beginning September 29, 2006. Further, he provided persuasive testimony that, but for his injury, there were jobs that he could perform. I find that the Employee has carried his burden of proof that he is entitled to total incapacity benefits under § 213 of the Act from September 29, 2006 and ongoing.

[¶ 36] Whether an injured employee receives total or partial incapacity benefits depends on the extent to which that employee retains the ability to earn income after a work injury. 39-A M.R.S. §§ 212, 213, 214 (2008).

[I]n limited situations, an employee suffering only partial incapacity to earn may be entitled to "total" benefits pursuant to section 212 if the employee can establish both (1) the unavailability of work within the employee's local community, and (2) the physical inability to perform full-time work in the statewide labor market, regardless of availability.

*Monaghan v. Jordan's Meats,* 2007 ME 100, ¶ 12, 928 A.2d 786, 791. "A partially incapacitated employee may be entitled to '100% partial' incapacity benefits pursuant to section 213 based on the combi-nation of a partially incapacitating work injury and the loss of employment opportunities that are attributable to that injury." *Id.* ¶ 13. In order to obtain the 100% partial benefit, the employee must establish, pursuant to the "work search rule" that work is unavailable within his local community as a result of the work injury. *Id.*

[¶ 37] The hearing officer's findings are internally inconsistent and inadequate to support an award of 100% partial or total benefits. If the hearing officer intended to award 100% partial benefits pursuant to section 213, he should have stated his findings with respect to how he reached the conclusion that work is unavailable within the employee's local community as a result of the work injury, with reference to the factors outlined in *Monaghan,* 2007 ME 100, ¶ 21, 928 A.2d at 793.[5] If the hearing officer intended to award total benefits pursuant to section 212, he should have stated his findings with respect to (1) the unavailability of work within the employee's local community, and (2) the employee's physical inability to perform full-time work in the statewide labor market, regardless of availability.[6] He did

---

5. In *Monaghan v. Jordan's Meats,* 2007 ME 100, 928 A.2d 786, we set forth several non-exclusive factors that hearing officers should consider when the employee attempts to prove unavailability of work with evidence of a work search:

(1) The number of inquiries made or applications submitted by an employee.
(2) Whether the search was undertaken in good faith.
(3) Whether the search was too restrictive.
(4) Whether the search was limited solely to employers who were not advertising available positions, or whether the employee also made appropriate use of classified ads or other employment resources in the search.

(5) Whether the search was targeted to work that the employee is capable of performing.
(6) Whether the employee over-emphasized work restrictions when applying for jobs.
(7) Whether the employee engaged in other efforts to find employment or increase prospects for employment.
(8) The employee's personal characteristics such as age, training, education, and work history.
(9) The size of the job market in the employee's geographic area.
*Id.* ¶ 21, 928 A.2d at 793 (citations omitted).

6. S.D. Warren also contends that the hearing officer erred by failing to classify the 2004 gradual injury as an aggravation to a pre-existing condition, and assess compensability

neither. On remand, after the reopened hearing, if the hearing officer determines that the employee has proved a mistake of fact, waiving the notice and statute of limitations periods, the hearing officer should make appropriate findings on this total-partial issue.

The entry is:

The decision of the hearing officer is vacated and the case remanded for proceedings consistent with this opinion.      .

pursuant to 39–A M.R.S. § 201(4) (2008). Because the hearing officer concluded alternatively that if section 201(4) applied, the 2004 gradual injury met the standard for compensability, we do not need to reach that issue.